# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **HEATHER AUSTIN,** | : |
| | : Case No. 2:20-cv-03846-ALM-KAJ |
| **Plaintiff,** | : |
| | : **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. | : |
| | : Magistrate Judge Kimberly A. Jolson |
| **MAYFLOWER MOVING GROUP, LLC** | : |
| **d/b/a CH GLOBAL PARTNERS,** *et al.*, | : |
| | : |
| **Defendants.** | : |

## OPINION & ORDER

This Court held a damages hearing in this matter on August 19, 2021, during which Plaintiff Heather Austin asked the Court to award her both compensatory and punitive damages. (*See* ECF No. 31). Also before the Court are Ms. Austin's Motion to Take Judicial Notice (ECF No. 32) and Motion for Attorney Fees (ECF No. 34). For the following reasons, the Court **GRANTS** Ms. Austin's motion to take judicial notice, **GRANTS IN PART** her damages request, and **GRANTS IN PART** her motion for attorney fees.

## I. BACKGROUND

On July 6, 2021, this Court granted in part Ms. Austin's Motion for Default Judgment against Defendants Mayflower Moving Group, LLC d/b/a CH Global Partners ("Mayflower") and Valiant Movers Inc. ("Valiant")[1]. (ECF No. 31). Specifically, the Court granted declaratory judgment for Counts One through Twelve, which arise under the Federal Motor Carrier Safety Regulations ("FMCSR"), and Count Fifteen, which arises under Ohio common law. (*Id.*).

---

[1] Ms. Austin originally brought this suit against several additional Defendants, but Defendants Mayflower and Valiant were the sole remaining Defendants when the Court ruled on default judgment.

Once a default is entered, a defendant is considered to have admitted all well-pleaded allegations in the complaint. *Fordyce v. Bath*, No. 2:13-cv-692, 2014 WL 1818313 (S.D. Ohio May 6, 2014) (citing *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009)). Ms. Austin's allegations about Mayflower's and Valiant's violations of the FMCSR and the Ohio common law were therefore admitted as true.

The Court also granted Ms. Austin's request for a damages hearing, which was held on August 19, 2021. Prior to the hearing, Ms. Austin submitted a Motion to Take Judicial Notice (ECF No. 32) and a Motion for Attorney Fees (ECF No. 34).

## II. JUDICIAL NOTICE

Ms. Austin asks the Court to take judicial notice of two documents when considering her requested damages: (1) "Your Rights and Responsibilities When You Move," which is a guidance document created by the Department of Transportation Federal Motor Carrier Safety Administration ("Federal Motor Carrier Safety Administration" or "FMCSA"); and (2) the Mayflower's FMCSA registration. Both documents are published on the FMCSA website.

Federal Rule of Evidence 201(b) permits a court to take judicial notice of facts "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Ev. 201(b)(2). The Court must take judicial notice if a party requests it and supplies the Court with the necessary information. Fed. R. Ev. 201(c). Here, Ms. Austin asks the Court to take judicial notice of a guidance document produced by the Federal Motor Carrier Safety Administration and Mayflower's FMCSA registration, both of which she supplied to the Court. The Court therefore **GRANTS** Ms. Austin's

motion and takes judicial notice of both the guidance document and Mayflower's FMCSA registration.[2]

### III. DAMAGES

At the damages hearing, the Court heard oral argument and testimony from Ms. Austin. The Court also received into evidence several exhibits, including photographs of the damage to Ms. Austin's personal property, repair cost estimates, and receipts for her moving-related transactions with Mayflower, Valiant, and ABF Freight System.

#### A. Compensatory Damages

Ms. Austin asks the Court to award the following compensatory damages to her: (1) the total amount she paid to Defendants for moving services, or $8,528.04; (2) the total amount she paid to ABF Freight System for substitute moving services, or $3,352.00; and (3) the cost to repair the damage done to her antique desk and curio cabinet, or $3,360.00.

Transportation carriers subject like Mayflower and Valiant are "liable for damages sustained by a person as a result of an act or omission of that carrier or broker" for violating the FMCSR. 49 U.S.C. § 14704(a). Additionally, carriers are liable for "household goods that are lost, damaged, destroyed, or otherwise not delivered to the final destination" in "an amount equal to the replacement value of such goods." *Id.* § 14706(f)(2). At the damages hearing, Ms. Austin provided financial records demonstrating that she paid Defendants $8,528.04 for services she did not receive. She also submitted photographic evidence of damage to her antique desk and curio cabinet, as well as estimates for the cost to repair the furniture, which total $3,360.00. The Court

---

[2] The Court notes that these documents do not affect the analysis that follows in the remainder of this Opinion and Order. When this Court awarded partial default judgment on July 6, 2021, the Court determined that the allegations in the Amended Complaint were admitted, and it established the Defendants' liability. The only remaining question before the Court is the extent to which damages and attorney fees should be awarded.

3

therefore finds that Ms. Austin should receive a damages award for her payments to Defendants and for damage to her personal property in the amounts she requested.

This Court, however, cannot award compensatory damages for Ms. Austin's payment to the substitute moving company, ABF Freight System. After Defendants failed to move Ms. Austin's items per their agreement, Ms. Austin sought the services of a substitute moving company, ABF Freight System. Ms. Austin ultimately paid ABF Freight System $3,352.00, which was less than $3,600.00 she initially bargained to pay Defendants for similar moving services. The cost of her replacement movers did not augment her overall moving costs, so this cost does not constitute damages resulting from Defendants' FMCSR violations. Accordingly, Defendants are not liable for Ms. Austin's alternative moving arrangements, and the Court **DENIES** her request for the amount she paid to ABF Freight System for moving services.

In sum, the Court **GRANTS IN PART** Ms. Austin's compensatory damages request. The Court **GRANTS** damages to Ms. Austin for the amount she paid to Defendants for moving services, or $8,528.04, as well as $3,360.00 in property damage, for a total compensatory award of $11,888.04. The Court **DENIES** Ms. Austin's request to receive $3,352.00 in compensatory damages for the cost of her substitute mover.

### B. Punitive Damages

Ms. Austin also seeks punitive damages against Defendants in an amount of three times her compensatory damages, or $35,664.12.[3] While the FMCSR does not articulate a standard for awarding punitive damages, Ohio law allows courts to award punitive damages for fraud claims.

---

[3] Ms. Austin initially requested $15,240.04 in compensatory damages and $45,720.12 in punitive damages, but she amended this request at the damages hearing in light of the Court's ruling that she could not receive damages for her substitute moving expenses.

4

*Alleman v. YRC*, 787 F. Supp. 2d 679, 684 (N.D. Ohio 2011) (citing *Preston v. Murty*, 32 Ohio St. 3d 334, 512 N.E.2d 1174, 1775 (Ohio 1987)).

Ohio Revised Code § 2315.21 governs the award of punitive damages in cases like Ms. Austin's. *Magical Farms, Inc. v. Land O'Lakes, Inc.*, 356 F. App'x 795, 798 (6th Cir. 2009) (finding the statute pertains to "civil action[s] for damages for injury or loss to person or property" such as fraud claims). Under the statute, punitive damages are only recoverable if two criteria are met:

> (1) The actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.
>
> (2) The trier of fact has returned a verdict or has made a determination pursuant to (B)(2) or (3) of this section of the total compensatory damages recoverable by the plaintiff from that defendant.

*Id.* (quoting Ohio Rev. Code § 2315.21(C)(1)–(2). Although the statute does not define "malice," the Ohio Supreme Court has defined it to mean "that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge" or, alternatively, "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston*, 32 Ohio St. 3d at 336, 512 N.E.2d at 1176.

Ms. Austin has met her burden in establishing Defendants' malice because she has shown they consciously disregarded her rights. The Complaint alleges that Defendants took possession of Ms. Austin's personal property on November 28, 2018 to move it from California to Ohio, per the parties' agreement. Ms. Austin had already moved to Ohio to care for her ailing parents, so she was not present the day Defendants picked up her belongings. Rather than transport Ms. Austin's property as agreed, Defendants held the property while demanding several additional payments

5

beyond the contracted amount. As Ms. Austin was not physically present in California and was eager to receive her personal items in Ohio, she paid Defendants additional sums totaling nearly $10,000.00 over the next several days. Despite these additional payments, Defendants did not transport her belongings to Ohio as promised; instead, they dropped off her possessions at her friend's front yard in California. Her items were damaged and left unattended in the rain, in contravention of the agreement. These allegations, which have already been admitted, are sufficient to establish the first criterion. Because this Court has also determined Ms. Austin's recoverable compensatory damages, punitive damages are warranted here.

As to amount, Ms. Austin asks the Court to award her three times her compensatory damages in punitive damages. Ohio law, however, does not permit such an award: "The court shall not enter judgment for punitive or exemplary damages in excess of two times the amount of compensatory damages awarded to the plaintiff from that defendant." Ohio Rev. Code § 2315.21(D)(2)(a). The Court therefore **GRANTS IN PART** Ms. Austin's request and awards her punitive damages of twice the amount of her compensatory damages, or $23,776.08.

## IV. ATTORNEY FEES AND COSTS

Ms. Austin is also entitled to an award of "reasonable attorney's fee[s]." 29 U.S.C. § 14704(e) ("The district court shall tax and collect that fee as part of the costs of the action.").

### A. Standard of Review

The Sixth Circuit has held that an award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011).

6

The Sixth Circuit has approved both methods. *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993). When using the percentage-of-the-fund-method, courts in this Circuit generally approve awards that are one-third of the total settlement. *See, e.g.*, *Rotuna v. W. Customer Mgmt. Grp., LLC*, 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2020). The lodestar approach considers the number of hours spent by counsel, multiplied by reasonable attorney rates. *See Reed*, 179 F.3d at 471. While there is a "strong presumption" that this lodestar figure represents a reasonable fee, the movant bears the burden of proving that the number of hours expended and the rates claimed were reasonable. *Ousley v. Gen. Motors Ret. Program for Salaried Emps.*, 496 F. Supp. 2d 845, 850 (S.D. Ohio 2006) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Wilson v. Bridge Overlay Sys., Inc.*, No. 2:14-CV-156, 2016 WL 164056, at *1 (S.D. Ohio Jan. 14, 2016) (citing *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999)).

Important here, district courts have discretion "to adjust the [lodestar figure] upward or downward." *Hensley*, 461 U.S. at 434; *see also Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) ("Once the lodestar figure is established, the trial court is permitted to consider other factors, and to adjust the award upward or downward to achieve a reasonable result.") (citation omitted). Where the court lowers the award, it "should start with some particularity which of the claimed hours [it] is rejecting, which it is accepting, and why." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997).

### B. Law and Analysis

Under the percentage of the fund method, whereby counsel is typically awarded one-third of the overall settlement amount, Ms. Austin's counsel would be awarded $11,886.04. By contrast, under the lodestar method, Ms. Austin's counsel seeks $59,600.00. Counsel for Ms. Austin arrives at this latter figure by applying a $450/hour rate to work done by Mr. Skilliter and Ms. Gutter,

which totaled 124.5 hours, and by applying $250/hour for Mr. Mackey's work, which totaled 13.1 hours.[4] The Court finds that under the facts and circumstances of this case, the lodestar method is most appropriate. *See Barrett v. Green Tree Serv.*, 214 F. Supp. 3d 670, 674 (S.D. Ohio 2016) (quoting *Bldg. Serv. Local 47 Cleaning Cots. Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) ("It is well settled that the 'lodestar' approach is the proper method[.]")). In applying the lodestar method, however, the Court declines to adopt the hourly proffered by Ms. Austin. Accordingly, the Court exercises its discretion to adjust the lodestar figure downward by modifying the hourly rate below.

### 1. Hourly Rate

As to reasonable rate, "courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier*, 372 F.3d at 791. Specifically, regarding a request for attorneys' fees, "the primary concern is that the fee awarded be 'reasonable.'" *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (quoting *Reed v.* Rhodes, 179 F.3d 453, 471 (6th Cir. 1999)). A reasonable fee is one that is "adequately compensatory to attract competent counsel" but "avoids producing a windfall for lawyers." *Id.* (quoting *Geier*, 372 F.3d at 791). As the Sixth Circuit has explained, "[a] district court may look to a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Pro. & Cas. Ins.*, 437 F. App'x 496, 499 (6th Cir. 2011).

Here, according to the Ohio Bar Association's ("OSBA") 2019 Economics of Law Practice in Ohio Survey, the median hourly rate for Ohio attorneys with 11 to 15 years of experience is $250 per hour, and the median rate for Ohio attorneys with 3 to 6 years of experience is $200/hour.

---

[4] Counsel also suggests "a [lodestar] multiplier of 1.25 to 1.5, at the Court's discretion," to be applied to the $59,600.00 fee award. (*See* ECF No. 34 at 9).

*See The Econ. of Law Practice in Ohio in 2019*, Ohio State Bar Assoc. at 44; *see also Burgess v. Powers*, No. 1:05-cv-089, 2006 WL 8441744, at *4 (S.D. Ohio Dec. 22, 2006) (relying on an earlier OSBA survey to define a reasonable hourly rate in the legal community). At the time that counsel completed the work on this case, Mr. Skilliter's and Ms. Gutter's years of experience fell within 11- to 15-year range, and Mr. Mackey fell within the 3- to 6-year range. The Court therefore declines to adopt both the $450/hour rate for Mr. Skilliter's and Ms. Gutter's work and the $250/hour rate for Mr. Mackey's work.

Upon consideration of the OSBA survey and this Court's own knowledge and experience, the Court finds that a reduction of Mr. Skilliter's and Ms. Gutter's hourly rates to $250/hour is appropriate. *See Morse v. Specialized Loan Serv.*, No. 2:16-cv-689, 2018 WL 1725693, at *3 (S.D. Ohio Jan. 25, 2018) (citing *Szeinbach v. Ohio State Univ.*, No. 2:08-CV-822, 2017 WL 2821706, at *5 (S.D. Ohio June 30, 2017)). Additionally, the Court finds that the appropriate hourly rate for Mr. Mackey's hourly rate is $200/hour.

2. Hours Expended

As to time expended, the Court must also determine whether the number of hours expended was reasonable. *Satgunam v. Basson*, No. 1:12-CV-220, 2017 WL 3634014, at *4 (W.D. Mich. Aug. 24, 2017). Although courts must exclude from the lodestar calculation hours that were not reasonably expended, "[c]ourts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection.'" *Szeinbach*, 2017 WL 2821706, at *2 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Rather, courts must simply do "rough justice." *Id.* (quoting *Fox*, 563 U.S. at 838).

Plaintiff's counsel seeks fees for time spent drafting the Complaint and various motions throughout litigation, communicating with Ms. Austin and opposing counsel, drafting a settlement

9

agreement, and preparing for the damages hearing. Mr. Skilliter logged 92.3 hours on this case but adjusted them down to 74.5 total hours, while Ms. Gutter logged 73.85 hours total on the case but adjusted them down to 50 total hours. Both attorneys represent that the reductions reflect "time spent on administrative work and time entered in quarter hour intervals, rather than tenth hour intervals." (Skilliter Aff. ¶ 12, ECF No. 34-1; Gutter Aff. ¶ 12, ECF No. 34-2). In support, counsel attached several billing statements detailing the specific work performed.

Reviewing the hours expended on the litigation, the Court finds that the attorneys' time is supported by detailed descriptions of the attorneys' efforts and appear to be reasonably expended in this matter. *See Carroll v. United Compucred Collections, Inc.*, No. 1:99-00152, 2008 WL 3001595, at *4 (M.D. Tenn. July 31, 2008).

The Court holds that, with the above corrections, the rates charged by Ms. Austin's counsel are consistent with the rates charged by attorneys of comparable skill and experience in Ohio, and the time spent on the matters at issue is reasonable and does not include any improper charges. Thus, Ms. Austin shall receive attorney fees at the following rates for the following hours: (1) $18,625.00 for Mr. Skilliter's 74.5 hour of work, billed at $250 per hour; (2) $12,500.00 for Ms. Gutter's 50 hours of work, billed at $250 per hour; and (3) $2,620.00 for Mr. Mackey's 13.1 hours of work, billed at $200 per hour. Accordingly, the Court **GRANTS IN PART** Ms. Austin's motion and awards $33,745.00 in attorney fees.

## V. CONCLUSION

For the reasons stated above, Ms. Austin's Motion for Judicial Notice is **GRANTED**. (ECF No. 32). Additionally, the Court **GRANTS IN PART** Ms. Austin's request for damages in the amount of $35,664.12 and **GRANTS IN PART** her request of attorneys' fees and costs in the amount of $33,745.00. The Clerk is **DIRECTED** to **ENTER JUDGMENT** against Defendants

Mayflower Moving Group, LLC d/b/a CH Global Partners and Valiant Movers Inc. in the amount of $69,409.12.

      **IT IS SO ORDERED.**

                                                        **ALGENON L. MARBLEY**
                                                        **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  August 27, 2021**